UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PRIDE CENTRIC RESOURCES, INC., formerly known as PRIDE MARKETING AND PROCUREMENT, INC., *Plaintiff* | CIVIL ACTION NO.   19-10163 SECTION: "D" (1) |
| VERSUS | JUDGE WENDY B. VITTER |
| LAPORTE, A PROFESSIONAL ACCOUNTING CORPORATION, ET AL., *Defendants* | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the Motion to Quash filed by defendants LaPorte, APAC ("LaPorte") and Continental Casualty Company ("Continental"). (Rec. Doc. 51). At oral argument on October 16, 2020, the court denied the motion in part and took the issue concerning the deposition of Continental under submission. (Rec. Doc. 67). For the following reasons, the Motion to Quash the deposition of Continental is DENIED, provided that the deposition will proceed subject to the limitations discussed herein.

Background

Pride Centric Resources, Inc. ("Pride") is a Colorado member-owned cooperative that purchases food service equipment in large quantities in order to obtain savings for its member dealers. In 2006, approximately 80% of Pride's members formed Foodservicewarehouse.com, LLC ("FSW"). LaPorte audited the financial statements of Pride and FSW in 2013 and 2014. In 2014, Pride agreed to provide a $5 million guarantee when FSW increased its line of credit with IberiaBank by $5 million. Pride agreed to increase its guaranty to $10 million when the line of credit was increased again in May 2015. According to the Complaint, IberiaBank was relying on the LaPorte audits for the continued extension of credit to FSW. In December 2015, Pride alleges

1

that its board relied on LaPorte's audits when it agreed to increase the guarantee to $15 million. In mid-February 2016, Pride was informed that rather than earning a profit in 2015 as expected, FSW suffered a loss expected to be in the range of $10-$15 million. IberiaBank foreclosed on the loan, swept Pride's bank accounts, and required Pride to pay $3.5 million to obtain a release of Pride's procurement cash accounts.  Pride says it paid $15.7 million to IberiaBank under its guaranty.

FSW is presently in a Chapter 7 liquidation proceeding that was initiated in April 2016. Pride initiated its action against LaPorte in a proceeding before an accounting review panel in October 2016. Pride filed this lawsuit on May 7, 2019, against LaPorte, a number of its employees, and Continental. Pride alleges that LaPorte breached its duty of care, skill, and diligence to Pride by failing to disclose certain material findings in the 2013 and 2014 audits. Pride alleges that Continental was LaPorte's liability insurer during the relevant time period and that it is liable to Pride under the Louisiana Direct Action Statute, La. Rev. Stat. § 22:1269.

The trial of this matter is scheduled to begin on January 11, 2021. The deadline to complete discovery is November 16, 2020. A separate lawsuit against LaPorte filed by the trustee of FSW's bankruptcy estate is also pending in the same section and division of this court and set for trial the same date.[1] The matters have not been officially consolidated; however, the parties have been conducting discovery jointly. A motion reurging consolidation was recently filed by LaPorte. (Rec. Doc. #66)

The issue presently before the court is whether to quash the deposition of a representative of Continental, the insurer providing professional malpractice coverage to LaPorte for the relevant period. Defendants argue that the deposition notice lists topics and seeks documents that are

---

[1] It appears that although the discovery deadline in this matter has been extended to November, the other lawsuit still has a September 25, 2020, discovery deadline.

privileged and irrelevant. Pride seeks testimony and documents from Continental regarding the following:

- Communications regarding Pride and FSW's claims against LaPorte.

- Claims file for the FSW and Pride claims and underwriting file from 2013-2017.

- Coverage for LaPorte.

- Investigations of the claims of Pride and FSW against LaPorte.

- Continental's claims manual and procedures for accounting claims.

- Defenses to coverage, letters or reservations of rights, and potential denial of claims in response to Pride's claims.

- Per claim and aggregate deductibles for 2015 and 2016.

- Notice to Laporte relating to a conflict waiver.

- Excess policies that may provide coverage to LaPorte for the Pride and FSW claims.

- Knowledge of legal fees and costs paid to counsel for LaPorte.

Defendants point out that Continental has not asserted any affirmative defenses relating to coverage. No party has alleged Continental's bad faith nor has Continental alleged its good faith. They say that there has been no denial of coverage by Continental.[2] They add that the issue of which policy period will apply to satisfy any judgment is premature. Defendants submit that they have satisfied their discovery obligations by producing the relevant insurance policies. They also

---

[2] They note "[a]s evidenced by the joint representation of the insured and the insurers, CNA has not denied coverage regarding the claims of Pride or Hof." The court notes that since the filing of this motion, Continental has enrolled its own counsel in the related matter filed by the bankruptcy Trustee, but not in the present matter. See Hof v. LaPorte, 2:19-cv-10696, ECF #77 (E.D. La. Sept. 29, 2002). In that action, the Trustee has filed a Motion for Partial Summary Judgment arguing that the 2017-2018 policy applies to the Trustee's claims arising out of the 2013 audit. Id. ECF#61-2, at 9 (E.D. La. Sept. 7, 2020). In opposition, defendants argue that the 2015-2016 policy applies because LaPorte provided Continental with notice of FSW's claim on April 1, 2016. Id.  ECF #75, at 2 (E.D. La. Sept. 28, 2020).

argue that Continental should not be required to produce information concerning the defense costs that have eroded the policy for the same reasons that the court denied the Trustee's motion to compel this information in the related lawsuit. Defendants argue that the documents requested are protected by the work product privilege because they were prepared in anticipation of litigation. They also seem to argue that the documents are protected by the attorney-client privilege, but they do not explain how attorneys were involved with the communications at issue. They further argue that the protected communications have not been placed at issue and there is no support for finding that defendants will rely on any of the sought after documents to prove their affirmative defenses so there can be no finding that they have waived the privilege.

Pride opposes and argues that coverage is a significant issue in this case and that it is entitled to depose Continental, which is a named defendant. Pride points out that three policy periods may provide coverage for the claims here. Pride reports that Continental's policies are "claims made" policies and that it seeks to explore the notice provided by LaPorte. Pride says that LaPorte's counsel has informed it that the July 1, 2016-July 1, 2017 policy applies.[3] But it insists it is entitled to question Continental concerning which policy provides coverage and the basis for its decision. It also argues that it is entitled to production of the "notice" of claims. Pride adds that Continental denied most of the factual allegations of its complaint and argues that it should be allowed to explore the basis for Continental's answers and defenses. It points out that in its Answer to Pride's Complaint, Continental did not admit that it was LaPorte's liability insurer or that it is liable to Pride under the Louisiana Direct Action Statute. It insists that Continental has placed its lability to Pride at issue.

---

[3] As discussed further below, at oral argument, it appeared that Continental actually takes the position that the 2015-2016 policy applies.

Pride argues that the deposition is not unreasonably cumulative or duplicative because no other witness can provide the requested information. Pride says that the defendants have taken inconsistent and confusing positions on coverage. Pride argues that the request is timely because it was made during the discovery period. It submits that it seeks information related to the issuance of any reservation of rights, LaPorte's claims history with Continental, and the waiver of rights by any individual defendants. It argues that the importance of this testimony outweighs any burden to Continental.

Pride rejects the defendants' claim of privilege, arguing that the timing of when outside counsel was retained is critical to any determination. Without further explanation or legal support, Pride also argues that any privilege "has clearly been waived given the multiple competing and conflicted parties represented by counsel." (Rec. Doc. 58, at 7).

In reply, defendants argue that the issue of which policy provides coverage is irrelevant and premature because there has not yet been a finding of liability. They submit that the case law does not support disclosure of an insurer's claims file to a third party unless the third party has alleged bad faith. Defendants again insist that there has been no denial of coverage here and argue that the testimony and documents sought are irrelevant. Defendants further argue that Pride cannot make a request for blanket production of an insurer's claims file because of the privileged materials that may be contained therein. They submit that the deposition of a Continental representative is no different and should be prohibited. They argue that any testimony the representative could provide is not relevant to Pride's damages claim or third party claim against Continental.

At oral argument, the court inquired whether Continental would stipulate to coverage. It became clear that although Continental may not dispute that it owes coverage to LaPorte for Pride's claims, Continental takes the position that the 2015-2016 policy applies with a coverage

limit of $7,000,000. Pride, however, believes that the 2016-2017 policy applies. The policy term is important because during the 2016-2017 policy year, LaPorte carried both the $7,000,000 policy with Continental and an excess policy that provides an additional $3,000,000 in coverage. The issue of which policy applies depends on when LaPorte provided Continental notice of Pride's claims. At oral argument, the court determined that the notice must be produced and ordered that Continental produce both the notice from LaPorte and its response by October 19, 2020.

The court also asked counsel for LaPorte and Continental whether they had a joint defense agreement. They do not. However, counsel represented that there is a communication between LaPorte and its counsel waiving the potential conflict arising out of counsel's joint representation of LaPorte and Continental; no separate conflict waivers exist for the individual LaPorte defendants.

Additionally at oral argument, counsel for Pride agreed to waive its demand for discovery into the following topics:

- o   Continental's claims manual and procedures for accounting claims.

- o   Per claim and aggregate deductibles for 2015 and 2016.

- o   Knowledge of legal fees and costs paid to counsel for LaPorte.

The remaining deposition topics and document categories are discussed below.

<u>Law and Analysis</u>

*1. Scope of Discovery and Protective Orders*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." <u>Id.</u> The Rule requires consideration of the

following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

The advisory committee comments to the 2015 amendment to Rule 26 make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information sought is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Id. advisory committee's note to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Id.

Additionally, Rule 26(b)(2) requires that the court, on motion or on its own, limit discovery (1) that is unreasonably cumulative or duplicative or can be obtained from another source that is more convenient, less burdensome, or less expensive; (2) when the party seeking discovery has had ample opportunity obtain the information by discovery in the action; or (3) when the discovery is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i).

2. *Rule 30(b)(6) deposition of Continental*

In arguing that the deposition of a Continental representative is within the scope of discovery, Pride focuses on the issue of which Continental policy applies to the claims of Pride and FSW. As noted above, this issue turns on when LaPorte provided notice of the claims to Continental. The court has now required production of the notice and it has been produced. Pride

also highlights its need for information related to the issuance of any reservation of rights, LaPorte's claims history with Continental, and the waiver of rights by any individual defendants. LaPorte does not address the relevance of these issues, but focuses on the purported impropriety of the requests for the claims file and Continental's deposition.

  *a. Relevance of coverage information*

  Before addressing specific document requests and specific topics of inquiry, the court considers whether discovery into insurance is relevant at all. The court finds that coverage information is relevant and within the scope of discovery in this matter because Pride must establish coverage at trial to prove its Direct Action against Continental and Continental has not stipulated to coverage under the 2016-2017 policy.

  LaPorte argues that coverage is only relevant if the insurer has denied coverage.[4] LaPorte cites Blockbuster Entertainment Corp. v. McComb Video, Inc. 145 F.R.D. 402 (M.D. La. 1992). Like the present case, the plaintiffs in Blockbuster had brought a direct action against the insurer of the defendants. Id. at 403. The plaintiffs noticed the deposition of the insurer on topics relating to "insurance claims and coverage, processing insurance claims, interpretation of policy language, and approving a reservation of rights." Id. The plaintiffs also sought "production of documents, including correspondence, claim forms, manuals and other materials related to coverage, claims, processing claims and the claims made in this case in particular." Id. The insurer moved to quash. Id. The plaintiffs agreed to limit the scope of questioning and documents sought to insurance coverage. Id. at 405. The court held that unless the insurer was willing to stipulate that coverage existed and that it would not claim any conditions or exclusions in the policy were applicable to defeat coverage, the plaintiffs would be allowed to question the insurer on insurance coverage. Id.

---

[4] LaPorte points out that in the typical case, an insurer's claims file is sought by the insured who has asserted a coverage claim against the insurer.

at 404. The court observed that for the insurer to be liable to the plaintiffs, the plaintiffs had to establish that the policy provides coverage for the insured defendants' wrongful acts. Id. The court noted that "[i]f the denial of coverage is based on interpretation of policy language, the plaintiffs are entitled to learn whether that policy interpretation derives from some manual, internal memoranda, report, or other source, and whether the interpretation has been consistently applied." id. 404–05 (M.D. La. 1992). The court also held that the insurer had not met its burden of establishing the applicability of the attorney-client or work product privilege. Id. at 405. The court observed that the insurer had been in possession of the deposition notice for nearly a month and had not provided any specific information about documents being withheld on the basis of the attorney-client or work product privilege. Id. at 404.

LaPorte cites Blockbuster for the proposition that insurance coverage is only relevant if the insurer has denied coverage. But LaPorte's interpretation of Blockbuster is too limited. It is not clear from the Blockbuster opinion that the insurer had affirmatively denied coverage, only that it had refused to stipulate coverage existed. Similarly, Continental has not stipulated to coverage here. Further, Continental has indicated that it would not be willing to stipulate to coverage under the 2016-2017 policy period that Pride says is applicable.

LaPorte suggests that the issue of coverage should be deferred until liability is established at trial. . It cites Wood v. Todd Shipyards, where a district court in Texas held that the existence and limits of the defendant's liability policy were not discoverable. 45 F.R.D. 363, 364 (S.D. Tex. 1968). The court held that "[l]iability insurance coverage of the defendant is not relevant or material to" the basic issues of the case—the negligence of the parties and compensatory damages. Id. The Wood case was decided before the 1970 amendment to the Federal Rules of Civil Procedure, which explicitly required disclosure of insurance policies. See Fed. R. Civ. P. 26(b)(2).

The comments to that amendment explain that "[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Id.   comments to 1970 amendment. Moreover, in the Wood case the insurer was not a defendant. The Wood case does not prevent the discovery sought here.

LaPorte also cites cases holding that "until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and non-justiciable." New England Ins. Co. v. Barnett, 465 F. App'x 302, 308 (5th Cir. 2012); see Coregis Ins. Co. v. Sch. Bd. of Allen Par., No. 07-30844, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) ("[T]he duty-to-indemnify issue was not ripe when the underlying state court lawsuit had not been completed."); Threadgill v. Orleans Par. Sch. Bd., No. CIV.A. 02-1122, 2013 WL 3777036, at *2 (E.D. La. July 18, 2013) (quoting Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc., No. CIV.A. 10-1682, 2012 WL 1198611, at *11 (E.D. La. Apr. 10, 2012)) ("[T]the duty-to-indemnify issue [is] not ripe when the underlying  . . . lawsuit has not yet been completed.") (second and third alteration in original) (second and third alteration in original); Morad v. Aviz, No. CIV.A. 12-2190, 2013 WL 1403298, at *4 (E.D. La. Apr. 5, 2013) (holding that the insurer's duty to indemnify the claim was "not justiciable before the resolution of the underlying suit"); Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. St. Bernard Par. Gov't, No. CIV.A. 03-3551, 2004 WL 877379, at *2 (E.D. La. Apr. 21, 2004) (holding that the insurer's duty to indemnify claims were not yet ripe). But none of the cited cases bear much similarity to the issues before the court at this time.

In each case, a party (typically the insurer) asked the court to declare it had no duty to indemnify under an indemnity obligation. [5] Here, there is no declaratory judgment action, and this

---

[5] In Coregis, the insurer filed a declaratory judgment action seeking a declaration that its general liability policy did not cover certain claims against its insured that were proceeding separately in state court. 2008 WL

court has not been asked to determine the justiciability of such a claim.[6] At present, Pride is only seeking discovery into coverage related materials and testimony. Further, most of the cited cases did not involve a direct action against an insurer at all. Only <u>Morad</u> involved a direct action against an insurer proceeding simultaneously with the claim against the insured like the present matter. Perhaps the <u>Morad</u> case would support dismissal of a cross-claim or counterclaim by Continental that it had no duty to indemnify. But the case does not address discovery of insurance coverage information under circumstances like the present, where the plaintiff seeks coverage information for use in its direct action against the defendant's insurer where the insurer has not unequivocally admitted coverage in the case of its insured's liability. The court finds the cases cited by LaPorte

---

2325632, at *1. The Fifth Circuit held that the district court should not have addressed the merits of the insurer's duty to indemnify claim until the state court action was resolved. <u>Id.</u>  at *3.

    In <u>New England</u>, the insurer filed a declaratory action seeking a declaration that the consent judgment between its insured and the injured party was not enforceable against it. 465 F. App'x 302, 303–04 (5th Cir. 2012). In considering whether the "no action" and "consent to settle" clauses of the insurance policy precluded enforcement of the judgment, the Fifth Circuit rejected the insured's complaint that the insurer should have litigated its policy defenses earlier, noting that until liability is resolved, the issue of indemnity is premature. <u>Id.</u>  at 307-08.

    In <u>Threadgill</u>, an insurance policy was not at issue, but one of the defendants had asserted a cross claim alleging that another defendant would be obligated to indemnify it if it was found liable to the plaintiffs. 2013 WL 3777036, at *2. The cross-claim defendant sought to dismiss the claim, but the court held that because the cross-claim plaintiff's liability to the plaintiffs in the underlying lawsuit had not yet been determined, it would not decide at that time whether the cross claim defendant would be liable to indemnify the cross-claim plaintiff.  <u>Id.</u>

    In <u>Travelers</u>, the insurer had filed a declaratory judgment action seeking a declaration that it had no duty to insure the named or additional insured nor to defend or indemnify any of the claims pending against them in arbitration. 2012 WL 1198611, at *1. The insurer moved for summary judgment on its duty to defend and indemnify. <u>Id.</u> As to the duty to indemnify, the court denied the motion as premature because the arbitration had not yet determined the liability of the named and additional insured. <u>Id.</u>  at *11.

    In <u>Morad</u>, the plaintiff sued his home improvement contractor for professional negligence, breach of contract, and redhibition, and also joined the contractor's insurer as a defendant.  2013 WL 1403298, at *1. The insurer asserted a counterclaim for a declaratory judgment that it did not owe defense or indemnity. <u>Id.</u>  The court dismissed the counterclaim, finding as to the duty to indemnify, the claim was not justiciable before the resolution of the underlying suit.

    In <u>National Union</u>, the insured requested defense and indemnity from its insurer for a class action filed against it in state court. 2004 WL 877379. The insured denied coverage and filed a declaratory judgment action in federal court seeking a declaration that it had no duty to defend or indemnify. <u>Id.</u>  The court dismissed the duty to indemnify claim, finding it was not justiciable. <u>Id.</u> at *2.

[6] Although the Trustee has asked the court in the related matter to rule on which policy applies, Pride has not filed a similar motion here.

regarding the justiciability of an indemnity obligation do not offer any guidance to the issue of discoverability.

Importantly, this case has not been bifurcated for trial. Pride will have to present all of its evidence at trial and cannot wait to conduct discovery regarding the liability of Continental until after trial. Defendants have not addressed how Pride will be able prove its case against Continental without the requested discovery.

This case is most similar to <u>Blockbuster</u> where discovery of coverage information was allowed. Here, too, the court concludes that coverage information is relevant. Of the deposition topics and testimony sought by Pride, this would include:

- Defenses to coverage, letters or reservations of rights, and potential denial of claims in response to Pride's claims;

- Notice to Laporte relating to a conflict waiver; and

- LaPorte's notice of claims to Continental.

- Excess policies that may provide coverage to LaPorte for the Pride and FSW claims.

Relevant coverage information might also include some of the information contained in the requests for:

- Communications regarding Pride and FSW's claims against LaPorte

- Claims file for the FSW and Pride claims and underwriting file from 2013-2017

- Coverage for LaPorte

Such topics and documents are discoverable to the extent they concern coverage. However, to the extent such materials and testimony concerns other, non-coverage issues, the court's analysis of

the discoverability of merits related information below is applicable. Similarly, the following requested information,[7] does not appear to be relevant to the coverage question:

- Investigations of the claims of Pride and FSW against LaPorte.

Discovery into this topic is also governed by the analysis below.

b. *Discoverability of information relevant to the merits of Pride's claims and Privilege Issues*

Although Pride's argument focuses on coverage issues, it also asserts that it should be allowed to depose Continental regarding the basis for its merits defenses. Defendants do not appear to argue that such information would be irrelevant. They seem to argue that such information (for example, claims file documents reflecting investigation of the claims) is privileged. The court concludes that LaPorte has established that some, but not all, of the requested information is protected by the work-product doctrine and that as to the remaining information, LaPorte will be required to produce a privilege log or disclose the information.

Although defendants argue that an insurance claims file is only discoverable if there has been an allegation of bad faith, the court does not find a rule like this supported by the case law. Defendants cite[8] Dixie Mill Supply Co. v. Continental Casualty Co. where an insured sued its insurer for breaching its duty of good faith and fair dealing and for violating the Louisiana Unfair

---

[7] As noted above, Pride has agreed to waive discovery into the following topics:
- Continental's claims manual and procedures for accounting claims.
- Per claim and aggregate deductibles for 2015 and 2016.
- Knowledge of legal fees and costs paid to counsel for LaPorte

[8] They also cite Theriot v. Midland Risk Insurance Co., where the Louisiana Supreme Court recognized the right of a third party to assert a claim directly against an insurer for its breach of the duty of good faith or fair dealing and obligation to make reasonable effort to settle claims, but limited the cause of action to those claims enumerated by statute. 95-2895 (La. 5/20/97), 694 So. 2d 184, 193. Discovery was not at issue in Theriot and it is unclear how the case applies here. Similarly, LaPorte cites Kelly v. State Farm Fire & Casualty Co., where the Louisiana Supreme Court also considered the insurer's duty to settle claims in good faith, holding that an insurer can be found liable even if it never received a firm settlement offer and also if it has misrepresented or failed to disclose facts that are not related not the insurance policy's coverage. 2014-1921 (La. 5/5/15), 169 So. 3d 328, 341, 344. The Kelly case also did not involve a discovery issue and its applicability to the present matter is not clear.

Trade Practices Act. 168 F.R.D. 554, 555 (E.D. La. 1996). The court held that merely alleging bad faith was not enough to automatically permit discovery of the claims file. Id. at 559. The court required that the insured show that the insurer intended to prove its counterclaims or their good faith by disclosure of the contested documents. Id. The insured could not do so, nor could it show that it had a compelling need for the insured's attorney work product. Id. The insured's motion to compel was denied, except as to confirmation or transmittal letters, which the court found were not protected by the work product doctrine, attorney-client privilege, or joint defense doctrine unless they contained confidential communications or attorney advice, opinions, or mental impressions. Id.

Although defendants seem to cite Dixie on the general topic of discoverability, the case's holding turned on the application of the work product and attorney-client privilege. On the issue of whether these privileges apply here, the court notes that defendants have not prepared a privilege log and their allegations of privilege remain general. In other words, they have not specifically described the documents they are withholding, the date those documents were produced, and what privilege applies. Importantly, it is the party invoking the privilege that has the burden to show it applies. Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 721 (5th Cir. 1985). In the Blockbuster case cited above, the insurer's failure to do so by the time of the motion hearing resulted in a finding that the materials were not protected. 145 F.R.D. at 404.

Thus, the court turns to whether defendants have established that the materials sought by Pride are protected by the attorney-client or work product doctrine. With regard to the claims file and investigation materials, at oral argument, Pride represented that it is not seeking privileged communications. However, it argued that it is seeking documents or other factual information that may have been provided to LaPorte. It points out that although defendants take the position that

14

LaPorte notified Continental of Pride's claims in April 2016, LaPorte did not issue a litigation hold instructing its employees to preserve documents concerning the Pride audits until October 2016, when Pride filed its claim against LaPorte before the accounting review panel. Pride suggested that it is possible LaPorte provided Continental with relevant documents between April 2016 and October 2016 that were destroyed by LaPorte prior to the issuance of the litigation hold. As such, Pride speculates, the Continental file may be the sole repository of certain unknown but possibly relevant documents.

Defendants submit that blanket production of the claims file is inappropriate and that Pride must describe the documents they seek and show that unfair prejudice, undue hardship, or injustice would result from denial of production. This argument appears to assume that the entire claims file is protected by the work-product doctrine. Because of the issues raised by this case, it seems that the documents in the claims file could be grouped into two categories: (1) documents related to Continental's investigation of Pride and FSW's claims for purposes of providing coverage and assisting in the defense of this matter and (2) documents related to Continental's assessment of coverage and possible exclusions. Whether the documents are protected depends in part on what category the documents fall into.

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). In contrast, "materials assembled in the ordinary course of business," are excluded from work-product materials. United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. If the party resisting discovery

establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and the party "has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014).

The work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). Courts have stated that "[g]enerally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared." Chemtech Royalty Assocs., L.P. v. United States, No. 06-258-RET-DLD, 2009 WL 854358, at *2 (M.D. La. Mar. 30, 2009) (quoting Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., No. CIV. A. 00-CV-3683, 2001 WL 605199, at *4 (E.D. Pa. May 31, 2001)).

As it pertains to Continental's investigation of the merits of Pride's claims, Pride did not dispute that such documents were created in anticipation of litigation. The court agrees. However, if such investigation includes documents that were subsequently destroyed by LaPorte, the exception in Rule 26(b)(3)(A) may apply. To determine whether the exception is applicable, Pride and the court will need additional information. Thus, the court finds that investigation materials created from April 2016 through October 2016 shall be produced or shall be listed on a privilege log. Continental's other investigation material, however, can be withheld without the production

of a privilege log because the court finds that such investigation would have been created in anticipation of litigation.

As to coverage information, it is unclear whether any privilege would apply. Internal documents prepared by Continental regarding its assessment of coverage might be protected by the work-product doctrine as created in anticipation of litigation. But, it might also be categorized as created in the ordinary course of business. Any information conveyed by Continental to LaPorte regarding coverage might not be protected because on this issue, Continental and LaPorte are adverse.  There is a possibility of a joint defense privilege, but the defendants reported at oral argument that no joint defense agreement exists. As to the coverage information, the court finds that the defendants have not established the applicability of the work-product doctrine. However, instead of requiring disclosure at this time, the court will allow the defendants to produce a privilege log for any coverage related information being withheld as privileged so that they can attempt to meet their burden of showing that a privilege applies.

The limits imposed by the court regarding the documents to be produced applies similarly to the scope of the deposition of Continental, which shall be allowed to proceed. To avoid duplication of effort, the defendants shall produce the requested documents subject to the limitations herein along with any privilege log by October 30, 2020. Thereafter, the parties will attempt to resolve any privilege dispute between themselves and bring any remaining issues before the court. Once the privilege issues are resolved, the deposition of Continental shall proceed.

## Conclusion

For the foregoing reasons, the Motion to Quash the deposition of Continental and the associated document requests is DENIED, provided that the scope shall be limited to exclude discovery of non-coverage related information, except for factual information provided or

discovered during the period of April 2016 through October 2016 that has not already been produced. Additionally, defendants shall be allowed to produce a privilege log regarding any otherwise discoverable information that they contend is privileged. The documents and privilege log will be produced by October 30, 2020, and the deposition will proceed thereafter.

New Orleans, Louisiana, this 23rd day of October, 2020.

_____
Janis van Meerveld
United States Magistrate Judge

18