UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PRIDE CENTRIC RESOURCES, INC., FORMERLY KNOWN AS PRIDE MARKETING AND PROCUREMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10163 c/w 19-10696** |
| **LAPORTE, A PROFESSIONAL ACCOUNTING CORPORATION, ET AL.** | **SECTION D (1)** |

**THIS RULING APPLIES TO ALL CASES**

**ORDER AND REASONS**

Before the Court is Defendant Laporte's Motion for Summary Judgment.[1] Plaintiff Pride Centric Resources, Inc. has filed an Opposition[2] and LaPorte has filed a Reply.[3] Also before the Court is LaPorte's Motion for Partial Summary Judgment.[4] Plaintiff Ronald J. Hof has filed an Opposition,[5] and LaPorte has filed a Reply.[6] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court denies both Motions.

---

[1] R. Doc. 85.
[2] R. Doc. 97
[3] R. Doc. 137.
[4] R. Doc. 119. Laporte's Motion for Summary Judgment, R. Doc. 85, was filed in Case No. 19-10163. Laporte's Motion for Partial Summary Judgment, R. Doc. 119, was filed in Case No. 19-10696. The cases were subsequently consolidated. *See* R. Doc. 104. Because the issues raised in both motions are similar, they are being ruled on in one order, while being considered separately.
[5] R. Doc. 120.
[6] R. Doc. 121.

## I. FACTUAL BACKGROUND

This is an accounting malpractice case. LaPorte, A Professional Accounting Corporation ("LaPorte"), is a Louisiana accounting firm. LaPorte was hired as an independent auditor for FoodServiceWarehouse.Com, LLC, ("FSW") as well as Pride Centric Resources, Inc. ("Pride").[7] LaPorte signed two identical agreements: one with FSW and another with Pride.[8] LaPorte conducted independent audits of FSW and Pride for both 2013 and 2014.[9] LaPorte delivered the 2013 audit report to Pride on September 12, 2014 and delivered the 2014 audit report to Pride on September 14, 2015.[10] LaPorte delivered also delivered the 2013 audit report to FSW on September 12, 2014 and delivered the 2014 audit report to FSW on October 13, 2015.[11] Ronald J. Hof, Trustee for FSW's bankruptcy estate, and Pride, allege that LaPorte failed to conduct these audits properly, resulting in significant damage and ultimately the bankruptcy of FSW.[12] It is these allegations of professional negligence that underly the current dispute.

FSW filed for bankruptcy on May 20, 2016.[13] Pride subsequently filed a claim with the Louisiana Society of Certified Public Accountants on October 14, 2016 against LaPorte.[14] Pride alleges that LaPorte failed to conduct these audits properly, resulting in significant damage and ultimately the bankruptcy of FSW.[15]

---

[7] *See* R. Doc. 1-3 at ¶ 8.
[8] R. Doc. 1-3 at ¶ 10.
[9] R. Doc. 1-3 at ¶¶ 11-12.
[10] R. Doc. 85, R. Doc. 1 at ¶ 20.
[11] *Id.*
[12] *See generally id.*
[13] Bankruptcy Docket No. 16-11179, R. Doc. 1.
[14] R. Doc. 97.
[15] *See generally* R. Doc. 1-3.

LaPorte now moves for summary judgment. Defendant first argues that Pride's claims related to LaPorte's 2013 and 2014 audits are perempted under Louisiana law because a reasonable person in Pride's position would have discovered any malpractice or negligence at the time they received LaPorte's 2013 and 2014 audit reports, September 12, 2014 and September 14, 2015, respectively. In addition, LaPorte asserts that any damages arising from Pride's claim are limited by the terms of the engagement letters signed by FSW and LaPorte, which limit LaPorte's liability for all claims, damages, and costs to the "amount of fees paid by [Pride] to LaPorte for the services rendered."

Plaintiff has filed an Opposition,[16] in which it argues that Pride had relied on LaPorte's audits for years, there was no way for it to identify any errors in the reports, and that Louisiana courts have determined that discovery of an accountant's malpractice is a question of fact. As to LaPorte's limitation of liability claims, Pride argues the limitation of liability clause in the parties' engagement letters is void because it is contrary to the exclusive liability-damages provision of the Louisiana Accountancy Act and is contrary to the Louisiana Civil Code.

LaPorte has filed a Reply.[17] It argues that a reasonable person in Pride's position would have discovered any wrongdoing related to the 2013 and 2014 audits at or near the time they received the audit reports. In addition, LaPorte claims the Louisiana Accountancy Act is silent on the subject of limitation of damages, thus

---

[16] R. Doc. 97.
[17] R. Doc. 137.

meaning the limitation of liability provision in the engagement letters is valid and enforceable.

LaPorte also moves for partial summary judgment regarding Hof's claims.[18] LaPorte first argues that Hof's claims related to the 2013 audits are perempted under Louisiana law because FSW knew or should have known of any act, omission, or neglect by LaPorte upon delivery of the 2013 audit on September 12, 2014. LaPorte claims that La. R.S. 9:5604(B) requires any claim arising from an engagement to provide professional accounting services be filed within one year from the alleged act or within one year of its discovery, up to a maximum of three years after the alleged act occurred. Because Hof took no action until he filed a complaint with the Louisiana Society of Certified Public Accountants on May 17, 2018, LaPorte argues any claims related to the 2013 audit are perempted. In addition, LaPorte claims that any damages arising from Hof's lawsuit are limited by the terms of the engagement letters signed by FSW and LaPorte, which limit LaPorte's liability for all claims, damages, and costs to the "amount of fees paid by [FSW] to LaPorte for the services rendered."[19]

Hof has filed an Opposition,[20] in which he argues that federal bankruptcy law preempts Louisiana law and extends a trustee's deadline, in this case Hof's, to bring causes of action belonging to the bankruptcy estate by two years. As to LaPorte's limitation of liability claims, Hof argues the limitation of liability clause in the parties' engagement letters is void because it is contrary to the exclusive liability-

---

[18] R. Doc. 119. *See* fn 4.
[19] *Id.*
[20] R. Doc. 120.

damages provision of the Louisiana Accountancy Act and is contrary to the Louisiana Civil Code.

LaPorte has filed a Reply.[21] It argues that a reasonable person in FSW's position would have discovered any wrongdoing related to the 2013 audit at or near the time they received the audit report. In addition, LaPorte claims the Louisiana Accountancy Act is silent on the subject of limitation of damages, thus meaning the limitation of liability provision in the engagement letters is valid and enforceable.

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[22]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[23] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[24]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[25]

---

[21] R. Doc. 121.
[22] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[23] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).
[24] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[25] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[26] The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[27] If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[28] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[29]

### III. ANALYSIS

#### A. Peremption of Pride's Claims

The first issue before the Court is whether Pride's claims regarding LaPorte's audit reports are perempted under La. Rev. Stat. 9:5604(A-B). La. Rev. Stat. 9:5604(A) requires that any claims arising from an engagement to provide professional accounting services be filed:

---

[26] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).
[27] *Id.* at 1265.
[28] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[29] *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

within one year from the date of the alleged act, omission, or neglect or within one year from the date that the alleged act, omission, or neglect was discovered or should have been discovered; however, as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[30]

LaPorte contends that Pride executives, or a reasonable person in Pride's position, knew or should have known of FSW's financial troubles based on LaPorte's 2013 and 2014 reports to Pride that addressed FSW financial issues. Because Pride guaranteed many of FSW's loans and shared board members and executives with FSW, the two companies' financials were closely aligned. LaPorte cites the affidavit of Robert Autenreith, former Pride CEO and FSW board member, in which he states that as of August 31, 2015, he was aware that the "internal [financial] records of FSW were in disarray and that FSW was in financial trouble," and that the Pride Board of Directors should have known of the financial status of FSW from 2014 to 2016 because at least three or four board members of the FSW management Committee were also on the Pride Board.[31] Based on Mr. Autenreith's admissions, LaPorte asserts that Pride was aware of FSW's financial situation and thus must have been aware of any issues with LaPorte's previously submitted audit reports because the reports addressed financial issues related to FSW.

In response, Pride claims that it had relied on LaPorte's audit reports and guidance for over fifteen years and that its board made decisions in part based on LaPorte's audit reports and relied on the firm's accounting expertise. Pride explained

---

[30] La. Rev. Stat. 9:5604(A)
[31] R. Doc. 85, Exhibit F.

that despite the fact that its executives, including Louis Puissegur III, former CFO of both Pride and FSW, received copies of LaPorte's audit reports, the company relied on the audit report's conclusion that FSW was financially sound when engaging in its growth plan.[32] Pride claims that its board was unaware of FSW's internal accounting issues until January 2016.[33] Pride maintains that it only learned of LaPorte's malpractice once Karin Sugarman, former Pride CEO, engaged counsel and accounting professionals to evaluate LaPorte's audit reports.[34] Pride thereafter filed a claim with the Louisiana Society of Certified Public Accountants on October 14, 2016, in keeping with the peremption deadline of La. Rev. Stat. 9:5604(A).

When considering a motion for summary judgment, courts are to construe all facts and make inferences in the light most favorable to the nonmoving party.[35] The Fifth Circuit resolves controversies in favor of the nonmoving party when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.[36] It is not the court's role at the summary judgment stage to weigh the evidence or evaluate witness credibility, but only to rule when the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in their favor.[37] When affidavits and exhibits present a choice of

---

[32] *See* R. Doc 97, Exhibit 7, Louis Puissegur, III Deposition.
[33] *See* R. Doc. 97, Exhibit 9, Kevin Bouma Deposition at 245.
[34] R. Doc. 97, Exhibit 4, Karin Sugarman Affidavit at 12-16.
[35] *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citing *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir.2005)).
[36] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[37] *Id.*; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *see Harrison v. Parker*, 31,844 (La.App. 2d Cir.5/5/99), 737 So.2d 160.

reasonable inferences, such inferences must be viewed in the light most favorable to the party opposing the motion for summary judgment.[38]

Louisiana courts have held that the issue of when accounting malpractice is discoverable is a question of fact.[39] In accordance with the Fifth Circuit, the Court must resolve any controversy in favor of the nonmoving party, in this case Pride, when both parties have submitted evidence of contradictory facts. In the present case, both parties have provided conflicting reports, supported by affidavits and deposition testimony, of when Pride became aware of material deficiencies in LaPorte's audit reports. Because the determination of the evidence provided by Pride or LaPorte's would involve weighing evidence and evaluating witness credibility, a role reserved for the jury at trial, the Court deems the question of when Pride became aware of material deficiencies in LaPorte's audit reports to be a question of fact, and thus determinable at trial. As a result, because the specific date of when Pride became aware of accounting misconduct by LaPorte has not yet been determined, Pride's claims are not perempted under La. Rev. Stat. 9:5604(A).[40]

---

[38] *Tucker v. Northeast Louisiana Tree Service,* 27,768 (La.App. 2d Cir.12/6/95), 665 So.2d 672; *Schroeder v. Bd. of Supervisors of Louisiana State Univ.*, 591 So.2d 342 (La.1991).
[39] *Ascension School Employees Credit Union v. Provost, Salter, Harper & Alford, L.L.C.*, App. 1 Cir. 2005, 916 So.2d 252, 2004-1277 (La.App. 1 Cir. 6/10/05) (finding that a genuine issue of material fact existed as to when credit union knew or should have known of alleged negligence of accountants in attesting to value of investments held with investment firm that was charged with securities fraud by the SEC, which precluded dismissal of malpractice claim on peremptory exception). *See also Cotter v. Gwyn*, CV 15-4823, 2017 WL 568789, at *4 (E.D. La. Feb. 13, 2017) (denying motion to dismiss professional malpractice claims and reasoning, "a finding of when Plaintiff should have discovered his claim…is a factual determination inappropriate for resolution at this stage.")
[40] The Court notes that the issue of when Pride employees became aware of LaPorte's malpractice is an issue to be determined at trial. A jury's finding that the claims should have been discovered at a much earlier date could result in Pride's claims related to the 2013 audit report being perempted.

B.     **Peremption of Hof's Claims**

LaPorte also argues that Hof's claims relating to the 2013 audit are perempted under Louisiana law. LaPorte argues that Hof's claim regarding the 2013 audit is perempted under La. Rev. Stat. 9:5604(A-B), as FSW did not file this lawsuit within one year from the alleged negligent conduct. In response, Hof contends that federal bankruptcy law, specifically 11 U.S.C. § 108(a), extends the statute of limitations for a trustee to bring a claim on behalf of the debtor's estate by two years. In its reply, LaPorte asserts that a reasonable person or entity in FSW's position would have discovered any malpractice committed by LaPorte in its 2013 audit report. LaPorte does not address Hof's argument that federal bankruptcy law extends the statute of limitation for a trustee to bring a claim. Instead, LaPorte argues that FSW did not file for bankruptcy until May 20, 2016, well beyond La. Rev. Stat. 9:5604(A-B)'s one-year peremption period.

Plaintiff Hof was appointed as trustee of the debtor FSW on October 12, 2016.[41] Bankruptcy Code § 108(a) allows a trustee to commence an action on behalf of the debtor's estate within the period allowed by state law for such an action or within two years after the order for relief, whichever is later.[42] 11 U.S. Code § 108 states:

> (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

---

[41] Bankruptcy Docket No. 16-11179, R. Doc. 291.
[42] 11 U.S.C. § 108(a).

(2) two years after the order for relief.[43]

The subject of bankruptcy falls within the express constitutional powers of Congress, and bankruptcy law therefore takes precedence over state laws under the Supremacy Clause.[44] As the Fifth Circuit has explained, "the statute's clear purpose is to afford bankruptcy trustees extra time to assess and pursue potential assets of the debtor's estate. Congress drew no distinction among the state law vehicles that govern time limits for filing suit, whether statutes of limitations or prescription, repose or peremption. The language of Section 108(a) compels the conclusion that Congress expressly extended the time for pursuing any action that would otherwise be time-barred under state law."[45]

In *Stanley ex rel. Estate of Hale v. Trinchard*, the Fifth Circuit determined "[b]ecause Congress expressed an overriding and unqualified interest in allowing bankruptcy trustees sufficient time to discover causes of action on behalf of their estates, we hold that § 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a), extended Louisiana's legal malpractice peremption period."[46] The Fifth Circuit further explained that "[t]he language of Section 108(a) compels the conclusion that Congress expressly extended the time for pursuing any action that would otherwise be time-barred under state law."[47] In *Stanley*, a trustee filed a malpractice claim against the bankrupt party's former attorney in April 2002.[48] Defendant countered that the

---

[43] *Id.*
[44] U.S. CONST., art. VI.
[45] *Stanley ex rel. Estate of Hale v. Trainchard*, 579 F.3d 515, 519 (5th Cir. 2009).
[46] *Id.* at 516.
[47] *Id.* at 519.
[48] *Id.* at 517.

bankrupt party should have been aware of the attorney's malpractice as early as March 2001 and thus because the claim was not filed within one year, it was perempted under Louisiana law.[49] The Fifth Circuit held that because the bankrupt party declared bankruptcy in October 2001, before the peremption deadline expired (alleged by the defendant to be March 2002), 11 U.S.C. § 108(a) superseded Louisiana law and extended the trustee's filing deadline by two years, thus allowing the trustee's claim to proceed.[50]

Here, 11 U.S.C. § 108(a) supersedes La. Rev. Stat. 9:5604(A)'s one year peremptive period, and accordingly, the lawsuit was timely filed within the period allowed by state law for such an action or within two years after the order for relief, whichever is later.[51] Further, 11 U.S.C. § 301(b) defines "order for relief" as "[t]he commencement of a voluntary case under a chapter of this title."[52] FSW filed for bankruptcy on May 20, 2016 and thus the two-year statute of limitations under 11 U.S.C. § 108(a) for Hof to file his negligent accounting action against LaPorte began on that day.

It is not disputed that Hof filed a complaint with the Louisiana Society of Certified Public Accountants on May 17, 2018.[53] The Louisiana Accountancy Act explains that

> [a] claimant's filing with the society of a written request for review and paying to the society of the one hundred dollar filing fee in accordance

---

[49] *Id.*
[50] *Id.* at 519.
[51] 11 U.S.C. § 108(a).
[52] 11 U.S.C.§ 301(b); *see also Ramming v. United States*, 281 F.3d 158, 164 (5th Cir. 2001) (finding that the two-year extension for filing a lawsuit under federal bankruptcy law began when the appellant filed a voluntary chapter 11 petition).
[53] R. Doc. 61-2.

with R.S. 37:102(B) shall be deemed that claimant's exercise of his right to seek judicial cognizance of the claim or claims described in the written request for review for purposes of R.S. 9:5604.[54]

Accordingly, because Louisiana law recognizes a claim filed with the Louisiana Society of Certified Professional Accountants' review panel as an "exercise of his right to seek judicial cognizance of the claim or claims" and thus satisfying any peremption deadline, the Court considers Hof's claim filed with the Louisiana Society of Certified Professional Accountants on May 17, 2018 to be the commencement of the present lawsuit.[55] Thus, the claim filed on May 17, 2018 with the Louisiana Society of Certified Professional Accountants fell within two year statute of limitation which began running on May 20, 2016. As a result, Hof's claims related to the 2013 audit report were timely filed under federal bankruptcy law.

LaPorte also contends that FSW knew or should have been aware of any issues or claims arising from the 2013 audit upon the date of its delivery or alternatively, either June 29, 2015 or August 31, 2015 at the latest.[56] Hof contends that the earliest FSW could have been aware of any errors in the 2013 audit was on July 14, 2015, when Chase Bank advised FSW that its books and records were unreliable.[57]

Summary judgment requires the Court to make all reasonable inferences in favor of the nonmoving party, in this case Hof. Accordingly, the Court employs the

---

[54] La. Rev. Stat. 37:105.
[55] The Court distinguishes the present case from a previous Fifth Circuit determination that an administrative filing does not constitute commencement of an action under 11 U.S. Code § 301 (b). *TLI, Inc. v. United States*, 100 F.3d 424, 427 (5th Cir. 1996) (finding that an administrative tax refund application must precede a tax action and does not commence an action under § 108(a)). Hof's claim filed with the Louisiana Society of Professional Accountants was akin to a complaint filed in court and was far more detailed than the administrative tax refund filed in *TLI*.
[56] R. Doc. 119-1.
[57] R. Doc. 120.

July 14, 2015 date supplied by Hof for the present calculations, while acknowledging that when FSW employees became aware of issues or claims arising from the 2013 audit report as well as when a reasonable person would have become aware of those claims remains a material fact in dispute.[58] Because FSW filed for bankruptcy on May 20, 2016, FSW's claims related to the 2013 audit report had not yet been perempted and thus could be brought later by Hof, the Trustee, in accordance with federal bankruptcy law.

### C. Limitation of Liability

LaPorte next argues that the engagement letters for the 2013 and 2014 audits contain a limitation of liability clause that limits damages in the present case.[59] LaPorte executed two sets of identical engagement letters: one set with Pride to conduct audits for 2013 and 2014; and another set with FSW to conduct audits for the same time period. LaPorte contends that the engagement letters signed by LaPorte, Pride, and FSW for the 2013 and 2014 audits limit LaPorte's liability for "all claims, damages, and costs arising from this engagement [to] the amount of fees paid by [FSW] to LaPorte for the services rendered under this engagement letter."[60]

---

[58] The Court notes that the issue of when FSW employees became aware of LaPorte's malpractice is an issue to be determined at trial. A jury's finding that the claims should have been discovered at a much earlier date could result in FSW's claims related to the 2013 audit report being perempted.

[59] LaPorte also briefly argues that the same limitation of liability clause also limits the statute of limitations for Pride to file its claim from three years to two years after the date of the audit report's delivery in its Motion for Summary Judgment against Pride. The clause states "no claims arising out of services rendered pursuant to this agreement shall be filed more than two years after the date of the audit report issued by LaPorte." The Court finds that for the same reasons stated below, the engagement letter's clause limiting when claims can be brought is struck down for violating the provisions of the Louisiana Accountancy Act and Louisiana public policy.

[60] R. Doc. 85, R. Doc. 119-1.

In response, Hof and Pride argue that the Louisiana Accountancy Act contains a provision that invalidates any assessment of accountant liability-client damages that is inconsistent with the provisions of the Act and instead directs the trier of fact to determine damages.[61]

In its reply, LaPorte contends that the Louisiana Accountancy Act is silent on the subject of limitation of damages, meaning that the limitation of liability provisions in the engagement letters signed by LaPorte and Pride, and LaPorte and FSW are valid and enforceable.[62]

Under Louisiana law, contracts limiting liability are generally valid and enforceable.[63] Courts generally uphold such agreements when the parties are of equal bargaining power and have clearly expressed the intent to reallocate such risk.[64] The clause at issue in the engagement letters signed by LaPorte and Pride, and LaPorte and FSW, seeks to limit the amount of liability to "the amount of fees paid by [Pride or FSW] to LaPorte for the services rendered under this engagement letter."[65] Because the clause seeks to limit damages, the clause is more akin to a liquidated damages provision, also known as a stipulated damages provision, and will be treated as such.

Louisiana law permits parties to "stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an

---

[61] R. Doc, 97, R. Doc. 120.
[62] R. Doc. 121, R. Doc. 137.
[63] *Houston Exploration Co. v. Halliburton Energy Servs.*, 269 F.3d 528, 531 (5th Cir. 2001).
[64] *See McAuslin v. Grinnel Corp.*, Nos. Civ. A. 97-803, 97-775, 1999 WL 203279 (E.D. La. 1991) (noting the Louisiana Supreme Court upheld a release provision that was clear and express, and where there was no "suggest[ion] that one side had an unfair bargaining advantage over the other.")
[65] R. Doc. 119-1.

obligation."[66] That general rule is subject to an exception allowing judicial modification of a stipulated damages provision if it is "so manifestly unreasonable as to be contrary to public policy."[67] Liquidated damages are to be used to put the nonbreaching party in the same position it would have been in but for the breach.[68]

When enforcing stipulated damages provisions under Louisiana law, courts consider three principles: (1) "the aim of a stipulated damages provision is to fix the measure of damages in advance and to constrain the timely performance of the principal obligation"; (2) "stipulated damages should reasonably approximate the obligee's loss in the event of a breach"; and (3) "the stipulated amount is presumed reasonable, and the party that says otherwise must rebut the presumption."[69] In order to defeat summary judgment on liquidated damages, the nonmoving party must demonstrate the existence of a genuine issue of material fact regarding the enforceability of the clause.[70]

Here, the engagement letters signed by LaPorte and Pride, and LaPorte and FSW limit recoverable damages in the event of a breach to "the amount of fees paid by [Pride or FSW] to LaPorte for the services rendered under this engagement letter." The clause fixes the amount of recoverable damages, and in turn limits LaPorte's

---

[66] LA. CIV. CODE art. 2005 (stating "a stipulated damages clause is given effect if the court deems it to be a true approximation of actual damages").
[67] LA. CIV. CODE art. 2012; *see also Indus. Mar. Carriers, Inc. v. Holnam Inc.*, 1991 A.M.C. 2196, 2197 (E.D. La. 1991).
[68] *Farmers Exp. Co. v. M/V Georgis Prois*, 799 F.2d 159, 163 (5th Cir. 1986).
[69] *Bellwether Enter. Real Estate Capital*, No. 19-10351 c/w 19-13058, 2020 WL 3076661, at *6–7. (E.D.LA. Jun. 10, 2020) (overturning a stipulated damages provision, specifically a contract extension fee, that was unreasonable and violated public policy).
[70] *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, No. 10-0044, 2011 WL 890680, at *15 (E.D. La. Mar. 11, 2011).

financial liability, to a maximum of $19,000 for the 2013 audit report and $31,876.25 for the 2014 audit report.[71] In the present suit, Hof and Pride contend that LaPorte's negligent accounting practices and reports caused FSW to incur $50 million in debt it could not repay. Hof and Pride's lawsuit is predicated in part on a breach of contract and its alleged damages are far greater than the stipulated damages of $19,000 for the 2013 audit report and $31,876.25 for the 2014 audit report set out in the engagement letters. It is clear to the Court that the stipulated damage amounts do not come close to reasonably approximating the loss in the event of a breach.[72] It is further clear to the Court that the parties did not attempt to reasonably approximate damages in the event of a breach.[73]

The Court next evaluates whether the engagement letter's liquidated damages provision violates Louisiana public policy. While stipulated damages in Louisiana are presumed reasonable, clauses that are manifestly unreasonable and contrary to Louisiana public policy must be struck down. The Louisiana Accountancy Act governs accounting in the state and includes an entire section devoted to damages in accounting liability cases.

---

[71] R. Doc. 1-2 ¶ 24-25.
[72] *See Prof'l Fluid Servs., LLC v. Norsk Bronnservice AS*, 2017-920, p. 6 (La. App. 3d Cir. 4/25/18); 245 So. 3d 47, 52, writ denied, 2018-0869 (La. 10/29/18); 254 So. 3d 120 (citing *John Jay Esthetic Salon, Inc. v. Woods*, 377 So.2d 1363, 1367 (La.App. 4 Cir. 1979), writ denied, 380 So.2d 78 (La.1980)) (finding "[n]o matter how clearly such penalty clauses are written, courts as a matter of public policy should decline to enforce an agreement which clearly is not one for true liquidated damages."); *see also Bellwether Enter. Real Estate Capital*, No. 19-10351 c/w 19-13058, 2020 WL 3076661, at *6–7. (E.D.LA. Jun. 10, 2020) (citing Saul Litvinoff, 6 LA. CIV. L. TREATISE, Law Of Obligations § 13.18 (2d ed.)) (explaining "a court cannot decide if a stipulated damages provision is 'manifestly unreasonable' without comparing the stipulated amount to the obligee's expected or actual damages).
[73] *See Keiser v. Catholic Diocese of Shreveport, Inc.*, 38,797, p. 9 (La. App. 2d Cir. 8/18/04); 880 So. 2d 230, 236 (requiring courts evaluate whether parties attempted to approximate the actual damages when confecting the agreement).

> Notwithstanding any other law to the contrary, no judgment for money damages may be entered against any licensee or any employee or principal of a licensee by any person or entity claiming to have been injured by the licensee, employee, or principal except in accordance with the provisions of this Section:
>
> (2) If the licensee, employee, or principal is not proven to have acted with the deliberate intent to deceive, manipulate, or defraud for his or its own direct pecuniary benefit, the amount of the liability in damages shall be determined as follows:
>
> (a) The trier of fact shall determine the percentage of responsibility of the plaintiff, of each of the defendants, and of each of the other persons or entities alleged by the parties to have caused or contributed to the harm alleged by the plaintiff. In determining the percentages of responsibility, the trier of fact shall consider both the nature of the conduct of each person and the nature and extent of the causal relationship between that conduct and the damage claimed by the plaintiff.
>
> (b) The trier of fact shall next determine the total amount of damages suffered by the plaintiff caused in whole or in part by the plaintiff, the defendants, and other persons alleged to have caused or contributed to the damage.
>
> (c) The trier of fact shall then multiply the percentage of responsibility of the licensee, employee, or principal by the total amount of damages and shall enter a judgment or verdict against the licensee, employee, or principal in an amount no greater than the product of those two factors.
>
> (d) In no event shall the damages awarded against or paid by a licensee, employee, or principal exceed the amount determined in Subparagraph (c) of this Paragraph. The licensee, employee, or principal shall not be jointly liable on any judgment entered against any other party to the action.[74]

While the Louisiana Accountancy Act is silent on liquidated or stipulated damages and does expressly authorize parties to opt out of some of its requirements (such as its review panel process), it does not explicitly allow parties to contractually

---

[74] La. R.S. 37:93.

opt out of the mandatory liability and damages provisions in La. R.S. 37:93. In addition, when promulgating the Louisiana Accountancy Act, the Louisiana legislature repeatedly noted its importance in protecting the public interest. "[P]ublic interest requires that persons professing special competence in accountancy or offering assurance as to the reliability or fairness of presentation of such information shall have demonstrated their qualifications to do so."[75] The legislature also stated that "the public interest further requires that the conduct of persons and firms certified, permitted, or licensed as having special competence in accountancy be regulated in all aspects of their professional work."[76] The legislature's intentions regarding the Louisiana Accountancy Act and its importance in protecting the public interest is in keeping with the Louisiana Civil Code, which states: "[p]ersons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."[77] Accordingly, the engagement letters that seek to limit LaPorte's liability for its accounting reports not only fail to reasonably approximate FSW's loss in the event of a breach, as evidenced by the damages purportedly suffered by FSW and Pride, but also contravene Louisiana public policy, specifically the letter and spirit of the Louisiana Accountancy Act. As a result, these clauses that attempt to limit LaPorte's liability for its 2013 and 2014 audit reports are rendered void. LaPorte's Motion for Summary Judgment and Motion for Partial Summary Judgment on limitation of liability is denied.

---

[75] La. R.S. 37:71.
[76] La. R.S. 37:72.
[77] La. CIV. CODE. Art. 7.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 85) and Motion for Partial Summary Judgment (R. Doc. 119) are both **DENIED**.

New Orleans, Louisiana, September 17, 2021.

*Wendy B Vitter*
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**